

## Service of Process Transmittal
12/05/2014
CT Log Number 526184294

**TO:** Kaiper Wilson
Metropolitan Life Insurance Company
1095 Avenue of the Americas
New York, NY 10036-6796

**RE:** **Process Served in Missouri**

**FOR:** Metropolitan Life Insurance Company (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Michelle E. Cooper, Pltf. vs. Metropolitan Life Insurance Company and Metlife, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Notice, Petition |
| **COURT/AGENCY:** | 21st Judicial Circuit Court, St. Louis County, MO<br>Case # 14SLCC03966 |
| **NATURE OF ACTION:** | Insurance Litigation - Claim for policy benefits |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Clayton, MO |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/05/2014 at 09:00 |
| **JURISDICTION SERVED:** | Missouri |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after receipt, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Debbie S. Champion<br>Rynearson Suess Schnurbusch Champion, LLC.<br>500 N. Broadway, Suite 1550<br>St. Louis, MO 63102 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/05/2014, Expected Purge Date: 12/10/2014<br>Image SOP<br>Email Notification, CTServiceof Process ctserviceofprocess@metlife.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br><br>**TELEPHONE:** | C T Corporation System<br>120 South Central Avenue<br>Suite 400<br>Clayton, MO 63105<br>314-863-5545 |

Page 1 of 1 / RR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

EXHIBIT B



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>BARBARA W WALLACE | Case Number: 14SL-CC03966 |
|---|---|
| Plaintiff/Petitioner:<br>MICHELLE E COOPER | Plaintiff's/Petitioner's Attorney/Address<br>DEBBIE S. CHAMPION<br>RSS & C, L.L.C.<br>SUITE 1550<br>500 N. BROADWAY<br>ST. LOUIS, MO 63102 |
| vs. | |
| Defendant/Respondent:<br>METROPOLITAN LIFE INSURANCE COMPANY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>7900 CARONDELET AVE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Breach of Contract | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: METROPOLITAN LIFE INSURANCE COMPANY
Alias:
120 SOUTH CENTRAL AVENUE    SERVE CT CORPORATION SYSTEM
CLAYTON, MO 63105

**COURT SEAL OF**

**ST. LOUIS COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

21-NOV-2014
Date

_____
Clerk

Further Information:
TLC

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____(title).
☐ other _____.
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____   _____
Printed Name of Sheriff or Server    Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).

(Seal)

My commission expires: _____   _____
                           Date                              Notary Public

| | |
|---|---|
| Sheriff's Fees, if applicable | |
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $   10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

## Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

IN THE 21ST JUDICIAL CIRCUIT COURT
COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| MICHELLE E. COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| METROPOLITAN LIFE ) | |
| INSURANCE COMPANY ) | Cause No:   14SL-CC03966 |
| ) | |
| Serve: ) | |
| CT Corporation System ) | |
| 120 South Central Avenue ) | |
| Clayton, MO 63105 ) | |
| ) | Division No: |
| and ) | |
| ) | |
| METLIFE, INC. ) | |
| ) | JURY TRIAL DEMANDED |
| Serve: ) | |
| The Corporation Trust Company ) | |
| 1209 Orange Street ) | |
| Wilmington, Delaware 19801 ) | |
| ) | |
| Defendants. ) | |

**PETITION FOR DAMAGES**

COMES NOW Plaintiff Michelle E. Cooper (hereinafter "Plaintiff"), by and through the undersigned attorney, and for her claims against Defendant Metropolitan Life Insurance Company (hereinafter "METROPOLITAN LIFE") and MetLife, Inc. (hereinafter "METLIFE") states:

1. METROPOLITAN LIFE is a health and life insurance company that conducts business, through its employees and agents, in Missouri and throughout the United States.

2. METROPOLITAN LIFE is and was at all times pertinent hereto a New York corporation in good standing with its principal place of business in the State of New York, with sales extending into the County of St. Louis, State of Missouri.

3. METLIFE is and was at all times pertinent hereto an insurance company with services extending into Missouri.

4. METLIFE is and was at all times pertinent hereto the parent company of METROPOLITAN LIFE.

5. METROPOLITAN LIFE is and was at all times pertinent hereto an underwriting subsidiary of METLIFE.

6. METLIFE is a holding company that conducts business, through its subsidiaries, employees and agents, in Missouri and throughout the United States.

7. METLIFE is and was at all times pertinent hereto a Delaware corporation in good standing with its principal place of business in the State of Delaware, with holdings extending into the County of St. Louis, State of Missouri.

8. METROPOLITAN LIFE is and was at all times pertinent hereto an insurance company with services extending into Missouri.

9. METROPOLITAN LIFE disability insurance plans are insured and/or administered by METROPOLITAN LIFE.

10. Plaintiff is and was at all times pertinent hereto a resident of St. Louis County, Missouri.

11. Plaintiff's former employer, Anheuser Busch Companies, LLC, (hereinafter "Anheuser Busch") holds an insurance policy on behalf of its employees that is underwritten by Defendants.

12. Defendants issued and delivered said policy to Plaintiff while she was employed by Anheuser Busch.

13. Plaintiff and/or her former employer paid Defendants the insurance premium requested for the aforementioned policy during the time of her employment until she was no longer able to work because of her physical condition.

14. Defendants are obligated to pay disability benefits if an employee becomes disabled while covered under its policy.

15. Plaintiff has been diagnosed with Systemic Lupus Erythematosus (SLE), fibromyalgia, and Sjogren's Syndrome, causing widespread musculoskeletal and joint pain, severe fatigue, headaches, brain fog, and insomnia.

16. Plaintiff was placed on several prescription medications, including Plaquenil, as a result of her condition.

17. Plaintiff could not work or perform her job without this prescription medication as a result of her condition.

18. In October, 2011, Plaintiff had a significant flare up of SLE symptoms, requiring frequent doctor's appointments to begin a new therapy and therefore, she was unable to work.

19. Plaintiff filed for short term disability in October, 2011, claim #341111047438.

20. Plaintiff returned to work on January 9th 2012, with temporary accommodations.

21. Plaintiff's physician prescribed Prednisone, in addition to Plaquenil which allowed Plaintiff to continue working, despite her symptoms.

22. Plaintiff was routinely screened for rod/cone dystrophy, a side effect of the drug Plaquenil.

23. On April 26, 2012, Plaintiff was seen by Dr. Pernoud at the Retina Institute and was diagnosed with rod/cone dystrophy, in both eyes, affecting her central visual acuity.

24. Dr. Pernoud requested that Plaintiff discontinue taking Plaquenil, which provided the only relief had previously allowed her to fulfill her occupational duties.

25. Solely because of Plaintiff's sickness and conditions described above, she was unable to perform the material and substantial duties of her regular occupation beginning May 24, 2012.

26. As of May 24, 2012, solely because of Plaintiff's sickness and conditions described above, she was unable to earn 80% or more of her indexed earnings from working her regular occupation.

27. Plaintiff applied for long term disability on October 26, 2012.

28. Defendant's policy for long term disability requires a 180 day elimination period.

29. Plaintiff's first long term disability claim #711210080452 was denied for the reason that Plaintiff had not completed the 180 day elimination period.

30. Plaintiff's second long term disability claim #701301101188050 was denied in a letter dated May 3, 2013 for reasons that documentation submitted did not support a finding of disability.

31. Plaintiff was disabled under the terms of Defendants' policy.

32. By being disabled, Plaintiff suffered the loss the Defendants' policy insures against.

33. Plaintiff was under the appropriate care of a physician for her disabilities.

34. Plaintiff was continuously disabled for a period of at least one hundred and eighty (180) days.

35. Plaintiff applied for SSDI and the claim was denied in a letter dated March 13, 2014.

4

36. Plaintiff requested an administrative hearing for SSDI which was held on July 31, 2014 and the claim was subsequently approved.

37. Plaintiff satisfied all terms and conditions of Defendants' policy.

38. Plaintiff gave notice of loss and proof of loss to Defendants as the policy required.

39. Defendants first refused to pay for Plaintiff's long-term disability benefits when Defendants denied her claim on May 3, 2013.

40. Plaintiff repeatedly requested that METROPOLITAN LIFE uphold the terms of the policy to provide her long-term disability benefits by filing an appeal.

41. METROPOLITAN LIFE upheld the denial of the claim in a decision dated June 12, 2013.

42. Defendants continued to refuse to pay Plaintiff's long-term disability benefits.

43. To this day, Defendants continue to refuse to pay Plaintiff's long-term disability benefits.

## COUNT I – BREACH OF CONTRACT

COMES NOW Plaintiff and for Count I of her claim against Defendants, states:

44. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1-43.

45. The policy and agreement between Plaintiff and Defendants obligated Defendants to pay long-term disability benefits to Plaintiff.

46. Plaintiff demanded such payment and Defendants refused to pay for such benefits and unreasonably refused to allow Plaintiff to receive benefit payments despite the fact that her medical condition prohibited her from keeping her employment and qualified as a disability under Defendants' policy.

47. Defendants' refusal to make long-term disability insurance payments breached the agreement between Plaintiff and METROPOLITAN LIFE.

48. Plaintiff was not in breach of the agreement and had satisfied or complied with all requirements under the policy/agreement, including the definition of disability.

49. As a result of Defendants' failure to perform the agreement, Plaintiff has been damaged in the following respects:

    (a) Plaintiff has incurred out-of-pocket expenses in excess of one thousand dollars ($1,000) for her medical treatment and medications;

    (b) Plaintiff has incurred attorneys' fees and costs in an increasing amount for the prosecution of this action;

    (c) Plaintiff has experienced pain and suffering for the continued widespread musculoskeletal and joint pain, severe fatigue, headaches, brain fog, and insomnia associated with SLE, fibromyalgia, and Sjogren's Syndrome that requires frequent medical treatment and medications; and

    (d) Plaintiff has increasing mental suffering and emotional distress associated with her inability to work and receive the compensation necessary to afford the medical costs associated with her deteriorating condition.

50. All of these damages were reasonably foreseeable, and were directly caused by Defendants' failure to provide long-term disability benefits to Plaintiff in the State of Missouri on the terms previously agreed upon between the parties.

WHEREFORE, Plaintiff respectfully requests this Court grant judgment on Count I of Plaintiff's Petition against Defendants in an amount which is fair and reasonable to compensate

Plaintiff for her injuries and losses in an amount determined by the finder of fact at trial, along with the attorney fees and costs of this action and with the awarding of benefits under the policy.

### COUNT II – Section 502(a) of ERISA

COMES NOW Plaintiff and for Count II of her claim against Defendants, states:

51. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1-50.

52. Plaintiff met all of the conditions and definitions under the policy for long term disability.

53. Plaintiff requested to recover long term disability benefits under the policy.

54. Defendants denied Plaintiff's request for long term disability benefits.

55. Plaintiff is entitled to long term disability benefits under the policy.

56. Defendants' denial was unreasonable.

57. As a result of Defendants' denial, Plaintiff has been damaged in the following respects:

    (a)    Plaintiff has incurred out-of-pocket expenses in excess of one thousand dollars ($1,000) for her medical treatment and medications;

    (b)    Plaintiff has incurred attorneys' fees and costs in an increasing amount for the prosecution of this action;

    (c)    Plaintiff has experienced pain and suffering for the continued widespread musculoskeletal pain associated with fibromyalgia that requires frequent medical treatment and medications; and

    (d)    Plaintiff has increasing mental suffering and emotional distress associated with her inability to work and receive the compensation necessary to afford the medical costs associated with her deteriorating condition.

    (e)    Plaintiff has a loss of benefits under the policy.

58. All of these damages were reasonably foreseeable, and were directly caused by Defendants' failure to provide long-term disability benefits to Plaintiff on the terms previously agreed upon between the parties.

WHEREFORE, Plaintiff respectfully requests this Court grant judgment on Count II of Plaintiff's Petition against Defendants in an amount which is fair and reasonable to compensate Plaintiff for her injuries and losses in an amount determined by the finder of fact at trial, along with the attorney fees and costs of this action and with the awarding of benefits under the policy.

## COUNT III – VEXATIOUS REFUSAL TO PAY

COMES NOW Plaintiff and for Count III of her claim against Defendants, states:

59. Plaintiff realleges and incorporates by reference herein the allegations contained in paragraphs 1-58.

60. As a result of Defendants' refusal to pay Plaintiff the long-term disability benefits she is entitled to under the terms of Defendants' insurance policy, Plaintiff has suffered, and will continue to suffer, monetary losses.

61. Defendants have failed to pay such losses without reasonable cause or excuse.

62. Defendants' aforementioned failure is in violation of Mo. Ann. Stat. § 375.420 (2014).

63. In addition to the amount of loss suffered by Plaintiff, plus interest, Plaintiff is entitled to damages not to exceed twenty (20) percent of the first fifteen hundred dollars ($1,500) of the loss, and ten (10) percent of the amount of the loss in excess of fifteen hundred dollars ($1,500).

64. Plaintiff is also entitled to reasonable attorneys' fees.

WHEREFORE, Plaintiff respectfully requests this Court grant judgment on Count III of Plaintiff's Petition against Defendants in an amount which is fair and reasonable to compensate

Plaintiff for her injuries and losses in an amount determined by the finder of fact at trial, along with the attorney fees and costs of this action.

Respectfully Submitted,

RYNEARSON SUESS SCHNURBUSCH CHAMPION, LLC.

BY:    /s/ Debbie S. Champion
       Debbie S. Champion,   #38637
       Sarah K. Taylor,       #57372
       500 N. Broadway, Suite 1550
       St. Louis, MO 63102
       Email: dchampion@rssclaw.com
       Email: staylor@rssclaw.com
       *Attorneys for Plaintiff*

## CERTIFICATE OF MAILING

The undersigned hereby certifies that a true and exact copy of the foregoing document was sent via Certified U.S. Mail on this 18th day of November, 2014 to:

Mr. Thomas E. Perez, Secretary
Department of Labor
200 Constitution Ave. NW
Washington DC 20210

Mr. Jacob J. Lew, Secretary
Department of Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

       /s/ Debbie S. Champion

9