# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3429
_____

Michelle E. Cooper

*Plaintiff - Appellant*

v.

Metropolitan Life Insurance Company

*Defendant - Appellee*

MetLife, Inc.

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 6, 2017
Filed: July 5, 2017

_____

Before WOLLMAN and LOKEN, Circuit Judges, and NELSON,[1] District Judge.

_____

NELSON, District Judge.

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, sitting by designation.

Michelle Cooper brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), claiming that Metropolitan Life Insurance Company ("MetLife") improperly denied her long term disability ("LTD") benefits under a group insurance plan sponsored by her former employer, Anheuser-Busch Companies, LLC ("Anheuser-Busch"). The district court[2] entered summary judgment in favor of MetLife, finding that there was no abuse of discretion. Cooper now appeals from that decision, arguing that the court erred in applying an abuse of discretion standard of review to MetLife's decision, and that it improperly excluded two affidavits from the record. Alternatively, Cooper contends that MetLife abused its discretion in denying LTD benefits. Finding no error, we affirm.

## I.

From August 2008 until May 2012, Cooper worked at Anheuser-Busch as a business-to-business coordinator. Her responsibilities in that position consisted primarily of acting as a point of contact for customers, which she accomplished through use of the phone, email, and social networks. Through her employment, Cooper was a participant in the Group Insurance Plan for Certain Employees of Anheuser-Busch Companies, LLC and its Subsidiaries (the "Plan"). Disability benefits under the Plan are funded by MetLife, which, as the Plan's claim fiduciary, is also responsible for adjudicating claims for those benefits. For purposes of LTD benefits, the Plan defines the terms "disabled" and "disability" as follows:

> Disabled or Disability means that, due to Sickness or as a direct result of accidental injury:

---

[2] The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

-2-

> You are receiving Appropriate Care and Treatment determined by Your Physician as necessary to treat the Sickness or injury;
>
> You are complying with the requirements of such treatment; and
>
> You are unable to earn:
>
>> during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings or adjusted Predisability Earnings at Your Regular Occupation from any employer in Your Local Economy; and
>>
>> after such period, more than 80% of Your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which you are reasonably qualified taking into account Your training, education and experience.

Due to illness, Cooper ceased working at Anheuser-Busch in October 2011. On November 4, 2011, she submitted an initial claim with MetLife for short term disability ("STD") benefits. To support her claim, Cooper provided a Supplemental Attending Physician Statement ("APS") completed by her physician, Dr. Varsha Rathod, which listed Cooper's primary diagnosis as "Sjogren's syndrome/SLE [systemic lupus erythematosus]," and her secondary diagnosis as migraine headaches. Dr. Rathod subsequently determined that Cooper could return to work on January 9, 2012, which she did. MetLife approved Cooper's claim for STD benefits through January 8, 2012.

Cooper continued to work at Anheuser-Busch through May 21, 2012, when she again left work, complaining of fatigue, joint pain, and poor focus. On September 12, 2012, MetLife received a second STD claim covering this new period of absence. In the APS supporting the claim, Dr. Rathod opined that Cooper could sit for two hours

continuously, stand or walk zero to one hour continuously, lift up to ten pounds occasionally, perform various fine motor movements, and operate a motor vehicle on a limited basis. She went on to opine, however, that Cooper could not climb, twist/bend/stoop, or reach above shoulder level, that she needed to move frequently when sitting, and had "visual field affects caused by Plaquenil." In Dr. Rathod's opinion, Cooper was "100% disabled currently" due to fatigue, joint pain, headaches, pleurisy, chest pain, and inability to focus. She further noted that "[w]e have tried to work thru' work accommodations and push her limits – it did not work after a 5 month trial."

On December 11, 2012, MetLife denied Cooper's second STD claim. In explaining its decision, MetLife highlighted what it considered to be a lack of "clinical evidence such as test results" to substantiate Cooper's "subjective complaints." On the evidence before it, MetLife concluded that there was not a sufficient basis upon which to conclude that Cooper could not perform her job duties. It advised her that further consideration of her claim would require "clinical or diagnostic evidence of functional deficits." This decision was followed up the following month with a notification that Cooper's initial LTD claim—based on an alleged disability date of October 26, 2011—was denied because she had returned to work from January 9, 2012 to May 21, 2012, and therefore had failed to complete the 180-day elimination period required by the terms of the Plan. MetLife informed her that it had opened a new LTD claim with a disability date of May 23, 2012.[3]

To support this second LTD claim, Cooper once again submitted an APS from Dr. Rathod, which was broadly similar in its diagnoses and conclusions to that submitted in connection with the first STD claim. Dr. Rathod noted objective

---

[3] Although Cooper did not dispute that she had not met the requirements of the elimination period, she nevertheless appealed the denial of her initial LTD claim by letter dated April 14, 2013, arguing that she was unable to work and was entitled to benefits.

-4-

findings of pallor and slight tenderness of the left flank, and listed Cooper's medications as Lunesta, potassium bicarbonate effervescent, and Seasonique. MetLife also received treatment notes submitted by Cooper's chiropractor, Dr. Joseph Lane, which documented objective findings of muscle spasms in the cervical and thoracic regions. Dr. Lane had treated Cooper with chiropractic manipulation and unattended electrical muscle stimulation.

MetLife denied Cooper's second LTD claim by letter dated May 3, 2013. The letter documented that Dr. Rathod had diagnosed Cooper with SLE, migraines, Sjogren's syndrome, and chronic fatigue syndrome, but noted that there was an absence of clinical findings that would objectively support these diagnoses. In particular, MetLife observed that although various lab tests had apparently been ordered by Dr. Rathod, no results had been submitted for review. On the whole, MetLife concluded that the findings submitted by Drs. Rathod and Lane did "not appear to be of such severity as to correlate with the severely restrictive physical limitations offered by Dr. Rathod." The letter concluded by informing Cooper of her right to appeal the claim denial, and advising her once again to submit any other relevant records in her possession to facilitate further review.

Although Cooper did not specifically appeal the May 3, 2013 denial, she continued to contact MetLife about all of her claims in connection with her appeal of the first LTD benefits denial. On May 6, 2013, Dr. Rathod submitted notes from office visits on February 5, March 22, and May 3, 2013, detailing complaints of "kidney issues" and migraines. MetLife referred these and previous records to Dr. Elena Schiopu, an Independent Physician Consultant ("IPC"), and—like Dr. Rathod—a specialist in rheumatology, for review. Dr. Schiopu duly prepared a report listing her findings and conclusions, which was submitted to MetLife on May 20, 2013.

In the report, Dr. Schiopu stated that she had reviewed all available documentation from Cooper's four disability benefits claims, as well as Cooper's job description. She also spoke by phone with Dr. Rathod, although she was unable to reach Dr. Lane. Although Dr. Rathod opined that Cooper was "too fatigued to return to work," she conceded that there were "no musculoskeletal reasons for [Cooper] to be having restrictions and limitations at work." The report noted agreement between the doctors that Cooper could potentially return to work on a trial basis, though she should be "closely followed." Ultimately, Dr. Schiopu concluded—in keeping with previous MetLife determinations—that there was an absence of objective clinical findings sufficient to support a determination that Cooper was disabled for purposes of the Plan.

MetLife faxed the IPC report to Drs. Lane and Rathod on May 22, 2013, and requested that they provide any comments by June 5, 2013. Neither doctor responded. MetLife also alerted Cooper to the contents of the report and requested that she contact her doctors to ensure that they had received the report, and to forward any comments they might have. Cooper acknowledged receipt of MetLife's letter on May 28, 2013, and attached a copy of a blood test showing an abnormal anti-nuclear antibody ("ANA") reading to her response. She also indicated that she had met with a retinal specialist who had confirmed that she still had blind spots in her central vision, and had recommended that she not take Plaquenil, as that could exacerbate the problem. Cooper stated that taking Plaquenil had previously enabled her to work full time, and that since she had stopped taking it, her fatigue had increased greatly. On June 5, 2013, MetLife received a report from the Retina Institute in St. Louis, Missouri, regarding Cooper's visual impairments. The report indicated that a full field electroretinogram ("ERG") had shown mild, diffuse rod and cone dysfunction in the right eye, and borderline rod and cone dysfunction in the left eye. The treating physician noted, however, that these results were not consistent with Plaquenil retinopathy. He recommended that Cooper undergo a follow-up ERG in two to three years to monitor progression.

These new reports were reviewed by a MetLife Appeals Nurse Consultant ("APNC") to determine whether they needed to be forwarded to Dr. Schiopu for reconsideration of her IPC report. The APNC ultimately concluded that the ANA lab report did not need to be forwarded because it merely confirmed the diagnosis of lupus, which Dr. Schiopu had not disputed when reviewing Dr. Rathod's records. The APNC further determined that the ERG report did not impact the claim given that the findings of mild rod and cone dysfunction were not consistent with Plaquenil retinopathy. Finally, the APNC reviewed Dr. Rathod's previous comments regarding Cooper's "brain fog" and poor concentration, for purposes of determining whether they warranted referral to a psychiatrist for review. Because there was no objective medical evidence to indicate the severity of the impairment, however, the APNC decided no referral was necessary.

MetLife notified Cooper that her appeal had been denied on June 12, 2013. While recognizing Cooper's continued subjective symptoms and complaints, MetLife noted that it was "without proof" that these symptoms or complaints rendered her disabled as defined by the Plan. Cooper filed this action on November 18, 2014, and MetLife moved for summary judgment, which the district court granted on July 20, 2016. Applying an abuse of discretion standard of review, the court concluded that MetLife had properly considered the medical records before it in finding that Cooper's illness did not render her disabled as defined by the Plan. In making this decision, the court refused to consider affidavits from Drs. Lane and Rathod questioning the veracity of Dr. Schiopu's report, because it found that these affidavits were not properly part of the administrative record.

II.

A.

Cooper first challenges the district court's application of the abuse of discretion standard to her denial of benefits. We review the district court's decision *de novo*. *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 630 (8th Cir. 2016).

In general, a claim administrator's denial of benefits is subject to *de novo* review by the district court. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan grants the administrator or fiduciary "discretionary authority" to determine eligibility for benefits, however, the standard of review is relaxed, and abuse of discretion becomes the appropriate benchmark. *See id.* Under the abuse of discretion standard, we will uphold a claim fiduciary's decision so long as it is reasonable and supported by substantial evidence. *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014) (citing *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-1000 (8th Cir. 2005) (en banc)). "A decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Ingram*, 812 F.3d at 634 (emphasis original) (citation and quotation omitted).

Here, the Plan confers on fiduciaries, including MetLife, "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." The parties do not disagree that this language is sufficient on its face "to trigger the abuse-of-discretion standard." *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829 (8th Cir. 2014). Cooper contends, however, that the conflict of interest inherent in MetLife's dual role as both the evaluator and the payor of benefits claims under the Plan renders a "less

-8-

deferential" version of abuse of discretion review appropriate. Relying on the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), she argues that the district court erred by not properly weighing MetLife's conflict of interest as a factor in its analysis.

Cooper is correct that *Glenn* requires a reviewing court to account for conflicts of interest in determining whether an administrator has abused its discretion. Our precedent, however, has consistently rejected the notion that the mere presence of a potential conflict of interest is sufficient to warrant a less deferential standard. *See e.g.*, *Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1140 (8th Cir. 2016); *Hackett v. Standard Ins. Co.*, 559 F.3d 825, 830 (8th Cir. 2009) (observing that "the conflict does not change the standard of review applied by the district court"). Such a result, we have recognized, would be "contrary to the case-specific test adopted in *Glenn*." *Whitley*, 815 F.3d at 1140. While a conflict of interest must be "weighed as a factor," *Glenn*, 554 U.S. at 115 (citation and quotation omitted), the weight afforded to it will depend on the facts presented to the court. Factors we have identified in the past as tending to demonstrate a consequential conflict of interest include evidence that the insurer's claims review process was tainted by bias; that the medical professionals who reviewed the claim for benefits were employed by the insurer, or that their compensation was tied to their findings; and that the insurer acted as little more than a rubberstamp for favorable medical opinions. *See Whitley*, 815 F.3d at 1140; *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012).

Here, Cooper presents us with no evidence of these factors, or of other indicia of biased decision making. Indeed, the record suggests that MetLife conducted a careful and thorough review of all of the documents provided to it, and that it relied on the medical expertise of an appropriately qualified independent expert in making its final decision. As the *Glenn* Court noted, an inherent conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." 554 U.S. at 117.

In this instance, the district court did not err in affording only minimal weight to MetLife's conflict of interest. *See Whitley*, 815 F.3d at 1140.

It was likewise not error, as Cooper contends, for the district court to exclude the affidavits of Drs. Lane and Rathod which she proffered at summary judgment. When an administrator's benefits determination is reviewed for abuse of discretion, "the scope of review is limited to the evidence that was before the administrator." *Siegel v. Conn. Gen. Life Ins. Co.*, 702 F.3d 1044, 1049 (8th Cir. 2013). Although this standard may be relaxed where the purpose of admitting the extrinsic evidence is limited to determining the proper standard of review, *Waldoch*, 757 F.3d at 830, Cooper's purpose here is to challenge the accuracy of Dr. Schiopu's report. This is a matter that could have been brought before MetLife in the claims appeal process,[4] and the district court did not abuse its discretion in excluding these affidavits from the record.

## B.

We now turn to consider whether MetLife abused its discretion in denying LTD benefits to Cooper. In doing so, "we do not substitute our own weighing of the evidence for that of the administrator," *Gerhardt v. Liberty Life Assurance Co. of Boston*, 736 F.3d 777, 780 (8th Cir. 2013), and will affirm if the decision was reasonable and supported by substantial evidence.

On review of the record, we find that MetLife's denial of LTD benefits was not an abuse of discretion. MetLife properly considered all medical records, APS reports, comments, and other information submitted by Cooper and her physicians. On appeal

---

[4]Indeed, MetLife faxed Dr. Schiopu's report to Drs. Lane and Rathod on May 22, 2013 for the express purpose of soliciting their comments on its accuracy, but neither of them replied.

of its initial decision, it consulted a neutral, independent doctor—with the same specialty as Cooper's attending physician—to review the record and make a recommendation, and gave Cooper's physicians an opportunity to respond. Although Cooper contends that Dr. Schiopu's report arbitrarily relied on a lack of objective indicia of disability to the exclusion of subjective indicia, it is generally "not unreasonable for a plan administrator to deny benefits upon a lack of objective evidence." *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833, 839 (8th Cir. 2006) (quoting *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924-25 (8th Cir. 2004)). This is especially so where, as here, the administrator has consistently specified the type of information sought, and the purpose is to substantiate the extent of the disability, rather than to question the diagnosis. *See id.*

Cooper's argument that it was arbitrary for MetLife to credit Dr. Schiopu's opinion that Cooper was not objectively disabled over Dr. Rathod's competing assessment is equally unavailing. MetLife is entitled to favor its own specialist's opinion, particularly given that Dr. Rathod was not tasked with interpreting "disability" as defined by the Plan. Based on the objective evidence, there was at best disagreement between the doctors as to Cooper's functional abilities, and in such a situation "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). As we have observed, "[w]hen there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physician, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006). Here, Dr. Schiopu's conclusion was one "that a reasonable mind might accept as adequate on this record." *Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005).

Finally, Cooper makes much of the fact that a MetLife APNC—not a doctor—determined that her ANA and ERG test results did not need to be forwarded

to Dr. Schiopu for her consideration.  In particular, she notes that Department of Labor regulations require a claim administrator to "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment" when "deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment."  29 C.F.R. § 2560.503-1(h)(3)(iii).  Because MetLife allowed a nurse with unspecified training to decide the medical importance of her lab tests, Cooper argues it violated these regulations.  In her view, this procedural failure warrants remand to the Plan or even outright reversal.

Arguably, we need not decide this issue, as the record suggests that Cooper did not raise this theory before the district court.  In any event, even if Cooper is correct in her application of the regulation—an issue we decline to reach here—MetLife's error would not warrant the relief she suggests because it was harmless.  As our sister circuits have recognized, the proper inquiry in analyzing a claim administrator's compliance with § 2560.503-1 is "substantial compliance," rather than "technical compliance."  *See Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1038 (8th Cir. 2016) (citing *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009)).  "While we have not expressly adopted this substantial compliance standard, we have applied a substantively equivalent standard, evaluating whether a plan's entire claim denial process provided the claimant 'a full and fair review of her claim.'" *Id.* (quoting *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896 (8th Cir. 2009)).  Here, Cooper presents no evidence to suggest that review of her ANA and ERG test results by a doctor would have altered MetLife's conclusion that she was not disabled for purposes of the Plan.  Indeed, the record reflects that the APNC correctly determined that the ANA result merely confirmed a diagnosis of lupus—which Dr. Schiopu had already accepted—and that the ERG had shown only mild rod and cone dysfunction that was inconsistent with Plaquenil retinopathy.  Nothing in the record shows that these findings would have altered the

Plan's determination of no disability, or that Cooper was denied a "full and fair" review of her claim.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 05, 2017

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  16-3429  Michelle Cooper v. Metropolitan Life Insurance Co.

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was Dean Andrew Stark, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief;  Debbie S. Champion and Margaret A Smith, both of Saint Louis, MO.

Counsel who presented argument on behalf of the appellee was Ann E. Buckley, of Saint Louis, MO. The following attorney(s) appeared on the appellee brief;  Ann E. Buckley, of Saint Louis, MO.

The judge who heard the case in the district court was Honorable Ronnie L. White. The judgment of the district court was entered on July 20, 2016.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

LMT

Enclosure(s)

cc:   MO Lawyers Weekly

District Court/Agency Case Number(s):   4:15-cv-00012-RLW

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 05, 2017

Mr. Dean Andrew Stark
RYNEARSON & SUESS
Suite 1550
500 N. Broadway
Saint Louis, MO  63102-0000

      RE:  16-3429  Michelle Cooper v. Metropolitan Life Insurance Co

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

      Michael E. Gans
      Clerk of Court

LMT

Enclosure(s)

cc:    Ms. Ann E. Buckley
       Ms. Debbie S. Champion
       Mr. Gregory J. Linhares
       Ms. Margaret A Smith

      District Court/Agency Case Number(s):   4:15-cv-00012-RLW